UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERMA J. VILLAMAR-STEVENSON, <br> Plaintiff, <br> v. <br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br> Defendant. | No. EDCV 08-825 AGR <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Erma J. Villamar-Stevenson ("Plaintiff") filed this action on June 19, 2008. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on July 22 and 23, 2008. On February 18, 2009, the parties filed a Joint Stipulation ("J.S.") that addressed the disputed issues. The Commissioner filed the certified administrative record (A.R.). The Court took the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the Commissioner's decision.

///
///
///
///
///
///

# I.
## PROCEDURAL BACKGROUND

On January 2, 2004, Plaintiff filed an application for Disability Insurance benefits. A.R. 11. The Commissioner denied the applications initially and upon reconsideration, and Plaintiff requested a hearing. *Id.* The Administrative Law Judge ("ALJ") conducted a hearing on November 30, 2005. A.R. 465-498. On March 14, 2006, the ALJ issued a decision denying benefits. A.R. 8-18.

Plaintiff filed a request for review of the ALJ decision. A.R. 6-7. On September 22, 2006, the Appeals Council denied the request for review. A.R. 3-5.

On August 15, 2007, this Court remanded the matter to the Commissioner for further proceedings. The ALJ was instructed "to address whether Plaintiff's work as a telerecruiter qualifies as past relevant work and to clarify or correct findings as to whether Plaintiff is capable of performing past relevant work as a home attendant." A.R. 541.

On remand, the Appeals Council vacated the ALJ's final decision and remanded the case to the ALJ for further proceedings. A.R. 544. The ALJ conducted a hearing on February 13, 2008. A.R. 576-603. On March 27, 2008, the ALJ issued a decision denying benefits. A.R. 502-513. Plaintiff requested review of the ALJ's decision. A.R. 501. As of approximately, May 27, 2008, the ALJ's decision became the final decision of the Commissioner. J.S. at 3. This lawsuit followed.

# II.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

### III.
### EVALUATION OF DISABILITY

#### A. Definition of Disability

"A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

#### B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2003. A.R. 508. Plaintiff has the severe impairment of "degenerative disc disease." *Id.* "[T]hrough the date last insured, the claimant had the residual functional capacity to perform light work." *Id.* She "can lift and carry 20 pounds occasionally and 10 pounds frequently. She can push and pull the same amount of weight with her legs. She can stand and walk for 6 hours out of an 8-hour work day, and she can sit for 6 hours out of an 8-hour work day. She can occasionally climb, balance, stoop, kneel, crouch, and crawl." *Id.*

The ALJ found that Plaintiff was able, through the date last insured, "to perform past relevant work as a telerecruiter, and this work was performed at the level of

substantial gainful activity." A.R. 512. The ALJ "adopt[ed] the testimony of the vocational expert," who testified that Plaintiff could "perform her past relevant work as an appointment scheduler (telerecruiter)." A.R. 513.

### C. Vocational Expert's Testimony

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Comm'r of the SSA*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ is not required to make explicit findings as to whether a claimant can perform past relevant work both as generally performed and as actually performed. *Id.* at 845.

In response to the ALJ's hypotheticals based upon an RFC assessment limited to light or sedentary work, the vocational expert ("VE") testified that Plaintiff could perform her past relevant work as an appointment scheduler (telerecruiter). A.R. 599-600. The VE described the appointment scheduler job as sedentary and semi-skilled. A.R. 599. The ALJ adopted this testimony. A.R. 513.

The ALJ may rely on testimony a VE gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ is not required to include limitations that are not in his findings. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

Plaintiff first argues that the VE testified that a person who was "off task 20% of the time due to pain" would not be able to work. J.S. at 5 (quoting A.R. 600). Because the ALJ did not include such a limitation in his residual functional capacity assessment, the ALJ did not err. *Rollins*, 261 F.3d at 857 ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by

substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

Plaintiff further argues that the ALJ failed to consider the time interval between the date she performed her work as a telerecruiter (1988-1992, A.R. 513) and her date last insured. Plaintiff cites a portion of the VE's testimony at the 2008 hearing that, as of five years earlier (the date last insured), appointment scheduling work would be handwritten or by computer depending upon the industry. A.R. 601-02. Plaintiff does not explain how this testimony undermines the ALJ's finding that she can perform her past relevant work as actually performed (handwritten),[1] or as generally performed. She argues only that the ALJ did not specifically address this testimony. J.S. at 7. Absent a showing that the testimony at issue undermines the ALJ's findings, Plaintiff's argument is not sufficient to show error. "[T]he ALJ does not need to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation and internal quotation marks omitted).

Lastly, Plaintiff argues that, in finding she could perform her past relevant work, the ALJ ignored her upper extremity limitations due to carpal tunnel syndrome. J.S. at 7. Plaintiff points to the VE's testimony that someone limited to occasional reaching and handling would be precluded from work as an appointment scheduler because she would not be able to reach for a telephone or reach forward to write. J.S. at 6 (quoting A.R. 602).

The ALJ found that Plaintiff was diagnosed with "mild" bilateral carpal tunnel syndrome in December 1993 (A.R. 267), but "there is no evidence of follow up care" from the alleged onset date of May 15, 2001 through the date last insured of December 31, 2003, and no evidence that it affected her more than minimally. A.R. 508-09.

---

[1] Plaintiff testified that she phoned potential blood donors and asked if they were available to donate blood on certain days. A.R. 470, 486. She handwrote the appointments and did not use a computer. A.R. 485-86. She did not write reports or complete forms. A.R. 86. However, Plaintiff does use a computer "to type on." A.R. 485.

Plaintiff does not dispute that the only reference to carpal tunnel syndrome is in December 1993. J.S. at 7. Even then, there is no evidence of limitations on Plaintiff's ability to perform basic work activities. "[T]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir 1993). A claimant must show that she is precluded from engaging in substantial gainful activity by reason of her impairments. *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

Plaintiff does not cite any evidence in the record to support her argument that she was limited to occasional reaching and handling during the relevant time period. J.S. at 7.

The ALJ relied upon a physician's opinion based on independent clinical findings dated March 29, 2001. A.R. 509, 345-54. Plaintiff did not complain about pain in her upper extremities and did not identify any history of carpal tunnel syndrome. A.R. 347-48. "She enjoys going to the store and riding her bike." A.R. 349. The examining physician did not diagnose any condition involving the upper extremities. A.R. 351. The follow-up examinations also did not identify any conditions or limitations on the upper extremities. A.R. 509-10.

The ALJ also relied upon an examining physician's opinion based on independent clinical findings dated April 22, 2004, four months after the date last insured. A.R. 510; A.R. 391-97. Although Plaintiff refused to raise her arms when asked to do so, she extended her shoulders to the front to 90 degrees when asked to show her elbows and hands. A.R. 393, 395. Range of motion in elbows and forearms were within normal limits. A.R. 393. With respect to wrists, hands, and fingers, the tests for carpal tunnel syndrome were negative bilaterally. *Id.* Range of motion was normal, and there was no evidence of sensory loss. *Id.* Plaintiff was able to make a fist, open her hands fully, and pinch with her fingers. *Id.* The examining physician did not assess any functional restrictions as to her upper extremities. A.R. 396. The ALJ

also examined her medical records in 2004, which did not reveal problems with upper extremities.[2]  A.R. 510.

Opinions by examining physicians based on independent clinical findings constitute substantial evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ properly relied on testimony the vocational expert gave in response to the hypotheticals that contained "all of the limitations that the ALJ found credible and supported by substantial evidence in the record."  *Bayliss*, 427 F.3d at 1217.  The ALJ need not accept testimony in response to a hypothetical that contained restrictions the ALJ rejected.  *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989).

### D.  Credibility

Plaintiff attacks the ALJ's findings as to her credibility, an issue she did not raise in her prior appeal.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).  The ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms.  A.R. 509.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her

---

[2]  Plaintiff points out that she was diagnosed with shoulder impingement in June 2005.  J.S. at 7; A.R. 417.  However, this diagnosis occurred a year and a half after the date last insured.  "[T]o obtain disability benefits, [a claimant] must demonstrate he was disabled prior to his last insured date."  *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991).  The claimant bears the burden of proof on this issue.  *Armstrong v. Comm'r of the SSA*, 160 F.3d 587, 589 (9th Cir. 1998).

symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ did not find malingering, but did find that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." A.R. 509. The ALJ cited eight reasons: (1) lack of objective medical evidence to support her degree of pain; (2) refusal to undergo epidural injections as recommended by her physician; (3) failure to follow through on acupuncture treatment as recommended by her physician; (4) exaggeration of her complaints; (5) failure to mention carpal tunnel syndrome at her first hearing; (6) lack of evidence that she had any treatment for carpal tunnel syndrome during the relevant time period; (7) failure of memory as to how long she had physical therapy on her hands; and (8) conservative pain treatment. A.R. 511-12.

Of the ALJ's eight reasons, Plaintiff challenges only two, the refusal to undergo epidural injections and inability to recall how long she underwent physical therapy on her hands. J.S. at 14.

Even assuming that the ALJ's reliance on these two reasons were erroneous, the ALJ's finding as to Plaintiff's credibility would still be supported by substantial evidence. In *Carmickle*, the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. The Court held that when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination*." *Id.* at 1162 (emphasis in original). Therefore, when, as here, an ALJ articulates specific reasons for discounting a claimant's credibility, reliance on an illegitimate reason(s) among

others does not automatically result in a remand.  *See Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision").

The court notes that Plaintiff's arguments completely ignore her last insured date, December 31, 2003.  The claimant bears the burden of demonstrating disability prior to the last insured date.  *Morgan*, 945 F.2d at 1080.

Turning to the ALJ's reasons for rejecting Plaintiff's credibility, the ALJ noted that there is nothing in the treatment record to support the degree of pain alleged.  A.R. 511.  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  As discussed above in Section III.C., the objective medical evidence during the relevant time period is consistent with the ALJ's residual functional capacity assessment.

Noncompliance with treatment may form the basis for an adverse credibility finding.  *Id.* (lack of consistent treatment may be considered in assessing credibility as to severity of pain); *Bunnell*, 947 F.2d at 346 (noncompliance with prescribed course of treatment is a relevant factor in assessing credibility).  Plaintiff does not dispute the ALJ's finding that she failed to follow through with recommended acupuncture treatment, and does not provide any explanation for that failure.  J.S. 16; A.R. 511.  She argues only that it is "simply ridiculous" to discount her credibility based on her failure to undergo epidural injections for her back pain.  Plaintiff testified that she is afraid of those injections.  A.R. 475.  Contrary to Plaintiff's argument, the ALJ's inference is not unprecedented.  *See Heller v. Barnhart*, 96 Soc. Sec. Rep. Service 397, 2004 U.S. Dist. LEXIS 8900, *41 (W.D. Wis. 2004) (as to epidural injections, "it was not unreasonable for the ALJ to conclude that an individual in severe pain would put his fear and doubts aside and follow his doctor's treatment suggestion").

The ALJ may properly consider exaggerated complaints in discounting a claimant's credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *see Batson*, 359 F.3d at 1196 (before examination, patient removed sweatshirt in a way that indicated greater range of motion than claimed). The ALJ referred to Dr. Meltzer's opinion. A.R. 511. As discussed in Section III.C., Plaintiff refused to raise her arms when Dr. Meltzer asked her to do so, but she extended her shoulders to the front to 90 degrees when asked to show her elbows and hands. A.R. 393, 395. Dr. Meltzer noted that Plaintiff said she could not bend her knees, but was able to sit with her knees bent to 90 degrees. A.R. 395-96. Dr. Meltzer stated that Plaintiff was "extremely uncooperative" and felt that "her subjective complaints far outweigh her objective findings such as they are with her minimal cooperation." A.R. 392, 395.

Plaintiff does not dispute the ALJ's finding that she failed to mention carpal tunnel syndrome in her first hearing,[3] yet asserted it as a reason she could not work at the second hearing after remand.[4] A.R. 511. An ALJ may properly rely on such inconsistencies in the claimant's testimony. *See Thomas*, 278 F.3d at 958-59. Plaintiff also does not dispute that she did not have treatment for carpal tunnel syndrome during the relevant time period. *Id.* It is in this context that the ALJ found Plaintiff's

---

[3] At the first hearing, Plaintiff testified only that she could not do the appointment scheduling work because "when I start writing, a huge, blue vein, it pops up here." A.R. 485.

[4] At the second hearing, Plaintiff testified that she has pain in her wrists when she tries to grip a pencil. A.R. 597. As noted above, Plaintiff tested negative for carpal tunnel syndrome on April 22, 2004. A.R. 393. She was able to make a fist and pinch with each of her fingers. *Id.* Plaintiff alleged that the problem with her right wrist started in May 2004, after the last insured date. A.R. 134. Even then, she stated she "can't write to (sic) long," not that she cannot write at all. A.R. 138. There is no evidence that Plaintiff's alleged problems with her right wrist was disabling during the relevant time period.

failure to recollect whether the physical therapy on her hands lasted five years was not credible.[5]  A.R. 584-85.

Finally, the ALJ may properly rely on conservative treatment for pain.  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007), *cert. denied*, 128 S. Ct. 1068 (2008); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (physical therapy and anti-inflammatory medication considered conservative treatment).

Accordingly, even assuming that the ALJ erred in relying on Plaintiff's refusal to undergo epidural injections and her failure to recollect whether she had five years of physical therapy on her hands, the ALJ's credibility finding is supported by other valid reasons and the record as a whole.  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."[6]  *Thomas*, 278 F.3d at 959; *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999).

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: June 22, 2009

ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

---

[5]  Plaintiff cites one physical therapy record that appears to indicate Jamar grip tests on the hands on three occasions, March 22, March 31 and May 9, 1995.  A.R. 243.

[6]  Plaintiff also argues that her ankles swell. J.S. at 11-12.  However, Plaintiff does not explain how swollen ankles would interfere with her ability to work.

11